**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALPHA CAPITAL ANSTALT

               Plaintiff,

      -against-

BRILLIANT TECHNOLOGIES CORPORATION,

               Defendant.

08 CV 03369 (DAB)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BRILLIANT TECHNOLOGIES CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) and 12(b)(1)**


Lawrence J. Reina, Esq. (LR-7327)
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Counsel for Defendant*

June 11, 2008

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    A.    The Parties and the Transaction Documents.............................................................2

        1.    The Note.......................................................................................................4

        2.    The Warrant .................................................................................................5

    B.    BTC's Attempts to Increase Its Number of Available Shares ................................6

    C.    The Present Lawsuit.................................................................................................7

ARGUMENT.................................................................................................................................7

    A.    Alpha Fails To Allege An Actionable Breach By BTC Of An Obligation To Deliver Shares Of BTC Common Stock Under Alpha's Notice of Conversion ................................................................................................................8

    B.    Alpha's Claims Relating To Exercise Of The Warrant Are Premature.................10

    C.    Count One Fails As a Matter Of Law Because Specific Performance For The Purchase Of Stock Is Not An Available Remedy For Alpha Under New York Law..........................................................................................................12

CONCLUSION............................................................................................................................14

## **TABLE OF AUTHORITIES**

### **CASES**

Ackerly Media Group, Inc. v. Sharp Electronic Corp.,
    170 F. Supp. 2d 445 (S.D.N.Y. 2001) ...............................................................................8

Alpha Automobile Brokers, Ltd. v. Continental Inc. Co.,
    728 N.Y.S. 2d 769 (2d Dep't 2001) .................................................................................12

Capa Partners Ltd. v. E-Smart Technologies, Inc.,
    5 Misc.3d 1017, 798 N.Y.S.2d 708 (N.Y. Sup. 2004).....................................................12

Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.,
    261 F. Supp. 2d 293 (S.D.N.Y. 2003) .............................................................................10

LaSalle Bank National Associate v. Citicorp Real Estate, Inc.,
    2003 WL 21671812 (S.D.N.Y. July 16, 2003).................................................................8

Musket Corp. v. PDVSA Petroleo, S.A.,
    512 F.Supp.2d 155 (S.D.N.Y. 2007) ................................................................................8

Oppenheimer & Co., Inc. v. Oppenheim, Appel & Dixon & Co.,
    86 N.Y.2d 685, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995).........................................8, 9

Waddle v. Cabana,
    220 N.Y. 18, 114 N.E. 1054 (1917).................................................................................12

### **STATUTES**

Federal Rules of Civil Procedure 9(c) ..........................................................................................8, 9

Federal Rules of Civil Procedure 12(b)(1)................................................................................1, 10

Federal Rules of Civil Procedure 12(b)(6).....................................................................................1

### **OTHER AUTHORITIES**

N.Y. Jur 2d Investment Securities § 99 .......................................................................................12

Yahoo Finance, Brilliant Technologies Corp. (BLLN.PK), available at
    http://finance.yahoo.com/q?s=blln.pk&d=t..........................................................6, 11, 12

Brilliant Technologies Corporation ("BTC") submits this Memorandum of Law, in support of its Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiff Alpha Capital Anstalt ("Alpha") alleges in its Complaint[1] that BTC breached its contractual obligations under certain transaction documents entered into between the parties: a Bridge Loan Agreement, a Promissory Note ("Note"), and a Common Stock Purchase Warrant ("Warrant")[2] (collectively, the "Transaction Documents"). In return for an investment of $350,000, Alpha received the Note in the principal amount of $371,000, the Warrant, and the opportunity to purchase BTC common stock by converting its investment into BTC common stock, subject to the occurrence of certain conditions: (1) the approval by BTC shareholders of an increase in the number of authorized shares, and (2) the filing of an amendment to the BTC certificate of incorporation reflecting the increase in authorized BTC shares. Alpha alleges that BTC breached its obligations under the Transaction Documents because it has not yet issued additional shares of common stock sufficient to satisfy BTC's obligations for conversion of debt under the Note and/or with respect to the Warrant.

Alpha is a sophisticated hedge fund. By entering into the investment transaction with BTC, Alpha took an investment risk in BTC, an emerging technology holding company. Despite BTC's attempt to schedule a shareholders' meeting and obtain shareholder consent to an increase in the number of available common shares, the shareholders' meeting has not yet occurred and

---

[1] A copy of the Complaint is annexed as Exhibit A to the accompanying Declaration of Lawrence J. Reina, Esq. dated June 11, 2008 ("Reina Decl.").

[2] Copies of the Bridge Loan Agreement, Note, and Warrant are annexed as Exhibits B, C, and D, respectively, to the Reina Decl.

the proposed increase in authorized shares has not yet been approved. This risk was specifically contemplated in the Transaction Documents. Thus, as certain conditions have not yet occurred, BTC's obligation to transfer shares of its common stock to Alpha has not arisen, and Counts I and II of Alpha's Complaint fail as a matter of law. Further, Alpha's claims based on a breach of the Warrant are also premature as the commencement date of the exercise period is conditioned upon the shareholders approving the issuance of additional shares (which has not yet occurred) and Alpha has not yet attempted to exercise its rights under the Warrant. As such, Alpha's claims in Counts I and II for recovery under the Warrant fail as they are not yet ripe for adjudication. Finally, Alpha is not entitled to the specific performance for the conversion of the securities sought in Count I, because there is an adequate remedy at law in the repayment of the note and cash exercise of the Warrant.

## STATEMENT OF FACTS

### A.    The Parties and the Transaction Documents

BTC is a publicly traded technology holding company, which, through its wholly owned subsidiary, is working to launch a digital music sharing website. See Reina Decl. Exh. E at F-7.[3] Alpha is a Liechtenstein-based corporation which operates as a hedge fund. See Reina Decl. Exh. A (Complaint) at ¶ 1. In September 2006, Alpha took an investment risk in BTC by loaning $350,000 to BTC. See Reina Decl. Exh. A (Bridge Loan Agreement) at ¶ 5.

On September 18, 2006, Alpha and BTC entered into a loan agreement for a sum of $350,000 pursuant to a Bridge Loan Agreement. Id. Pursuant to the terms of the Bridge Loan Agreement, BTC issued to Alpha the Note in the amount of $371,000 and the Warrant for the

---

[3]    A copy of BTC's Form 10QSB, filed with the Securities and Exchange Commission ("SEC") for the quarterly period ending March 31, 2007, Commission File Number 0-230761 ("BTC Form 10Q"), is annexed as Exhibit E to the Reina Decl.

purchase of 10,600,000 shares of BTC common stock.  See id.; Reina Decl. Exh. B (Bridge Loan Agreement), C (Note) & D (Warrant).  The Warrant, which expires on September 17, 2011, grants Alpha the option to purchase up to 10,600,000 shares of stock at an initial exercise price of $.07 per share.  See Reina Decl. Exh. D (Warrant) at 1.  By entering into the Bridge Loan Agreement, Alpha specifically represented that it "understands that its investment in the Securities involves a high degree of risk."  See Reina Decl. Exh. B (Bridge Loan Agreement) at 6.

The Bridge Loan Agreement provides that "on the Certificate of Incorporation Amendment Filing Date the Company will have sufficient authorized and unissued shares of Common Stock as would be necessary to effect the issuance of the Shares…" Id. at 7; see also id. at 16 ("After the Certificate of Incorporation Amendment Filing Date, the Company shall have at all times authorized and reserved for issuance … a number of shares (the "Minimum Available Shares") at least equal to one hundred percent (100%) of the number of shares which would be issuable upon the exercise of the outstanding Warrants held by all Holders.").  The "Certificate of Incorporation Amendment Filing Date" is "the date [BTC] files with the Secretary of State of Delaware the Certificate of Incorporation Amendment" (the "Certificate of Incorporation Amendment Filing Date").  Id. at 2, ¶ 1.b.  The "Certificate of Incorporation Amendment," as defined in the Bridge Loan Agreement, will increase BTC's authorized capital stock "in an amount sufficient such that all shares of common stock subject to the warrants can be issued upon the exercise of such warranty."  Id.

Alpha was also aware that whether or not the Certificate of Incorporation could be amended was subject to shareholder approval.  The Bridge Loan Agreement specifically states that, prior to the Amendment of the Certificate of Incorporation, "approval by the Shareholders

of the Company holding a Majority of the outstanding shares of Common Stock on the relevant record date" was required "for the issuance and sale of the Securities to the Buyer as contemplated by this Agreement." Reina Decl. Exh. B at 8, ¶ 3.f.

### 1. The Note

As part of the overall transaction, BTC issued to Alpha the Note with a principal amount of $371,000, which was to come due on November 3, 2006 (the "Maturity Date"). See Reina Decl. Exh. C (Note) at 1. The Note provided that "[i]f any portion of this Note is outstanding on the Maturity Date, interest at the rate of fourteen percent (14%) per annum or the highest rate allowed by law, whichever is lower, shall accrue…" Id. at 2. No interest accrued until November 3, 2006 (the "Maturity Date"). Id. Under the Note, if BTC defaulted for a period of at least five days after Alpha's notice to for demand of payment of the Note, and upon the occurrence of certain additional stated events, Alpha could exercise an option to convert the debt owed under the Note into shares of BTC common stock. Specifically, the Note states:

- ➢ "[T]he Holder of this Note will be entitled, at its option, **from and after the Certificate of Incorporation Amendment Filing Date** to convert at any time the principal amount of this Note … into shares of Common Stock…" (Id. at 2, ¶ 5(b)(i) (emphasis added)).

- ➢ "Conversion of this Note, **if applicable in accordance with Section 5(b)(i)**, shall be effectuated by faxing a Notice of Conversion … to the Company as provided in this Section 5(b)(ii)." (Id. at 3, ¶ 5(b)(ii) (emphasis added)).

The meaning of "Certificate of Incorporation Filing Date" is derived from referencing the Bridge Loan Agreement, since the Note specifically provides "capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bridge Loan Agreement." Id. at 1. The Note states that notices shall be given as provided for in the Bridge Loan Agreement, which provides that notices to BTC "shall be given in writing." See id. at 4, ¶11; Reina Decl. Exh. A (Bridge Loan Agreement) at 26-27.

Alpha's election to convert the amount due under the Note into BTC common stock therefore could only occur at least 5 days <u>after</u> Alpha provides written notice to BTC of an Event of Default under the Note <u>and</u> <u>after</u> "the date [BTC] files with the Secretary of State of Delaware the Certificate of Incorporation Amendment" (the "Certificate of Incorporation Amendment Filing Date"). <u>Id.</u> at 2, ¶5(b)(i) (emphasis added) and Reina Decl. Ex. B (Bridge Loan Agreement) at 2, ¶ 1.b. Alpha does not allege in its Complaint that it provided written notice of an Event of Default to BTC, nor does it generally allege that it satisfied all of its obligations under the Note. <u>See</u> Reina Decl. Exh. A (Complaint), generally.

On August 22, 2007, despite the fact that the Certificate of Incorporation Amendment Filing Date had not yet occurred, Alpha delivered to BTC a notice for $100,000 in principal and $48,188.78 in interest to be converted into 16,603,785 shares of BTC common stock. <u>See</u> Complaint at ¶ 8. At that time, BTC had been unable to convene the shareholders or obtain the votes necessary to amend its Certificate of Incorporation such that the Certificate of Incorporation Amendment Filing Date had not yet occurred.[4] As such, Alpha's request was premature.

**2. <u>The Warrant</u>**

The Warrant grants to Alpha the right to purchase on or after the "Commencement Date" and before September 17, 2011 at 5:00 pm, up to 10,600,000 shares of BTC common stock, $.001 par value per share, at an initial exercise price of $.07 per share. <u>See</u> Reina Decl. Exh. D (Warrant) at 1. The Commencement Date refers to the Certificate of Incorporation Amendment Filing Date, as defined in the Bridge Loan Agreement. <u>See</u> <u>id</u>. at 3. ¶ 2.3(a). As set forth above,

---

[4]   A copy of the complete set of filings by Brilliant Technologies Corporation, certified by the Secretary of State for the State of Delaware, dated April 1, 2008 ("BTC Delaware filings"), is annexed as Exhibit F to the Reina Decl.

the Certificate of Incorporation Amendment Filing Date has not yet occurred.  In addition, the Warrant contemplates that Alpha may elect a "cash" exercise instead of opting to purchase the BTC stock, whereby the cash equivalent of the number of shares outstanding under the Warrant may be paid in cash or by certified or official back check or by wire transfer at Alpha's request.  Id. at 2.  Alpha has not attempted to exercise its rights under the Warrant, by "cash" or "cashless" exercise, and cannot do so, as the exercise period for the Warrant has not yet commenced.  Further, as the $.07 per share exercise price of the Warrant is significantly higher than the current $.037 per share market price, even if Alpha could exercise, it would make little economic sense to do so until a later date.[5]

### B.      BTC's Attempts to Increase Its Number of Available Shares

Consistent with its obligations under the Transaction Documents, BTC attempted to hold a special shareholders meeting, a purpose of which was to increase the number of available shares of BTC common stock.  On March 14, 2007, BTC filed a definitive proxy with respect to the shareholders' meeting, at which the shareholders were to vote on an increase in the number of authorized common shares from 800,000,000 to 1.5 billion.  See Reina Decl. Exh. E (BTC Form 10Q) at F-31.  The shareholder's meeting was to be held on April 23, 2007.  See id.  However, the meeting was postponed.  See id.  As the Bridge Loan Agreement specifically contemplates, the "potential dilutive effect" of the transaction may have led to the existing shareholders resisting the issuance of additional shares.  Bridge Loan Agreement at 10-11, ¶ 3.o.  As of the end of May 14, 2008, there has been no shareholder approval of the issuance of additional authorized shares, and there has not been filed with the Delaware Secretary of State a

---

[5]  See Yahoo Finance, Brilliant Technologies Corp. (BLLN.PK), at http://finance.yahoo.com/q?s=blln.pk&d=t (citing current price of shares of BTC common stock) (last accessed June 10, 2008).

Certificate of Incorporation Amendment.  See Reina Decl. Exh. F (BTC Delaware filings).

      **C.**       **The Present Lawsuit**

Alpha alleges three causes of action against BTC in its Complaint.  In Count I, Alpha seeks specific performance, requesting the Court to force BTC to "authorize and reserve for issuance to Alpha Capital 50 million shares of BTC common stock" and "to honor all requests duly submitted to … convert all or any part of the Note into BTC common stock and to honor all exercises … of the Warrant."  In the remaining counts, Alpha seeks money damages based on BTC's "failure to deliver shares upon conversion of the Note" and "failure to authorize and reserve shares of stock" (Count II) and for BTC's failure to pay amounts due under the promissory note (Count III).

## ARGUMENT

Alpha's Complaint essentially alleges breach of contract by BTC under the terms of the Transaction Documents and demands as relief both specific performance and monetary damages. BTC now moves to dismiss Counts I and II of the Complaint because BTC's obligation to transfer shares of its common stock has not yet arisen under the terms of the Transaction Documents.  Any failure to authorize additional shares of BTC common stock was not due to a breach by BTC, but by its shareholders' failure to authorize BTC to do so, which was a risk specifically contemplated in the transaction documents.  Second, the claims brought by Alpha which are based on the Warrant are premature and not ripe for adjudication.  Finally, Count I of the Complaint must be dismissed because, under New York law, Alpha is not entitled to the specific performance it seeks.

### A. Alpha Fails To Allege An Actionable Breach By BTC Of An Obligation To Deliver Shares Of BTC Common Stock Under Alpha's Notice of Conversion.

In order to prevail on a breach of contract claim, a plaintiff must establish: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) nonperformance by the other party; and (4) damages attributable to the breach. Musket Corp. v. PDVSA Petroleo, S.A., 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007). The Federal Rules also require that the claimant must "aver generally that all conditions precedent have been performed or have occurred." Fed. R. Civ. P. 9(c); see also Ackerly Media Group, Inc. v. Sharp Electronic Corp., 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001).

"Under New York law, a condition precedent is an act or event which must occur before another party's duty to perform its promise arises." LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc., 2003 WL 21671812 (S.D.N.Y. July 16, 2003) (citing Oppenheimer & Co., Inc. v. Oppenheim, Appel & Dixon & Co., 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734, 737 (1995)). Determination of whether language constitutes a promise or condition precedent depends on whether the contract used the language in conditional terms, such as "if" and "unless and until." Oppenheimer, 86 N.Y.2d at 691. Here, the occurrence of the Certificate of Amendment Incorporation Filing Date is an express condition precedent, evidenced by the language "from and after" in the Transaction Documents. See, e.g., Reina Decl. Exh. C (Note) at 2, ¶ 5(b)(i) ("[T]he Holder of this Note will be entitled, at its option, **from and after the Certificate of Incorporation Amendment Filing Date** to convert at any time the principal amount of this Note … into shares of Common Stock…") (emphasis added). Similar language is used with respect to the express requirement regarding notice that must be provided to BTC prior to a Notice of Conversion. Id. ("…5 days **after notice from the Holder to the Company of such Event of Default,** the Holder of this Note will be entitled … to convert … the principal

- 8 -

amount … into shares of Common Stock…") (emphasis added)  "Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient." Oppenheimer, 86 N.Y.2d at 690.

Here, the issue is whether Alpha has alleged a breach of contract claim that establishes that BTC was under an obligation to convert its debt under the Transaction Documents into shares of BTC common stock on August 22, 2007, when Alpha transmitted its Notice of Conversion.  Alpha does not even generally allege that Alpha satisfied its own obligations under the Transaction Documents that would entitle it to the remedy it seeks (i.e., the issuance of a notice to BTC of an Event of Default). See Fed. R. Civ. P. 9(c).  Furthermore, it is clear from the Transaction Documents, which are referenced in Alpha's Complaint, along with the public filings of BTC with the Secretary of State of Delaware and with the Securities and Exchange Commission, that the Certificate of Incorporation Amendment Filing Date had not yet occurred.  As such, BTC's contractual duty to convert debt owed to Alpha into shares of BTC stock has not arisen.

The terms of the Bridge Loan Agreement and Note clearly and unambiguously provide that the following events must have occurred prior to a properly deliverable Notice of Conversion:  (1) a vote at the meeting of BTC's stockholders which increases BTC's authorized capital stock "in an amount sufficient such that all shares of common stock subject to the warrants can be issued upon the exercise of such warranty;"  (2) the amendment of BTC's Certificate of Incorporation to that effect; (3) the filing of a Certificate of Incorporation Amendment with the Delaware Secretary of State; and (4) the written notice of an Event of Default by Alpha to BTC, followed by a period of five days.  See Reina Decl. Exh. B and C

(Bridge Loan Agreement and Note). Until the Certificate of Incorporation Amendment is filed, any Notice of Conversion delivered by Alpha was then, and continues to be, legally ineffective. Id. Records from the Delaware Secretary of State demonstrate that no Certificate of Incorporation Amendment for Brilliant was filed since the making of the Bridge Loan and Note. See Reina Decl. Exh. F (BTC Delaware filings).

Despite the non-occurrence of these mandatory events, Alpha issued a Notice of Conversion to BTC on August 22, 2007, demanding the conversion of debt under the Note into 16,603,785 shares of BTC common stock. As BTC's obligation to convert the debt into shares has not yet arisen, BTC is not, and cannot be, liable to Alpha for such an alleged "breach" of its obligations under the Note. Thus, Alpha is not entitled to the relief it requests in Counts I and II of the Complaint with respect to the conversion of debt into shares under the Note.

   **B.** **Alpha's Claims Relating To Exercise Of The Warrant Are Premature.**

Alpha's claims in Counts I and II, to the extent Alpha seeks relief pursuant to the Warrant, which has not yet been exercised, fail because they are premature and not ripe for adjudication. "Ripeness is jurisdictional in nature and therefore properly considered on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). In Duane Reed, the Court dismissed the plaintiff's breach of contract claim as premature where the plaintiff had not yet filed a proof of loss under its insurance contract, and the defendant's obligation to perform was to arise only after a proof of loss is filed. Id. at 295 (dismissing claims as unripe and stating that plaintiff's filing a proof of loss was a condition precedent to recovery under the contract).

In Counts One and Two of the Complaint, Alpha alleges that it is entitled to damages relating to BTC's "failure to authorize and reserve shares of stock" pursuant to its rights under the Warrant. In essence, Alpha states that BTC breached its obligation to Alpha by failing to have a shareholders' meeting and force a majority of its shareholders to authorize additional shares of BTC common stock, such that it could file its Certificate of Incorporation Amendment. The problem with this argument is that BTC, as Alpha well knows, has no power to control the outcome of such a vote. Further, Alpha is not yet able to exercise its options under the Warrant, as the exercise period only commences after the Certificate of Incorporation Amendment Filing Date, which has not yet occurred (see Reina Decl. Exh. D (Warrant) at 1, 3 ¶ 2.3(a)), and Alpha's power of election remains open under the Warrant until September 17, 2011. Accordingly, Alpha's claims under the Warrant are premature. And even if Alpha could exercise under the Warrant, as the current market price for BTC common stock is presently far below the Warrant price of $.07, it would make no economic sense for Alpha to exercise its right to purchase shares under the Warrant until a future date.[6]

As Alpha has not yet attempted to exercise its cashless option under the Warrant to purchase shares of BTC common stock, Alpha is <u>not</u> entitled to the relief it requests in Counts I and II of the Complaint with respect to the Warrant. Until Alpha exercises its option to purchase stock pursuant to the Warrant, which is also a condition precedent to BTC's obligation to perform, its claims with respect to the Warrant are unripe for adjudication.

---

[6] See Yahoo Finance, Brilliant Technologies Corp. (BLLN.PK), at http://finance.yahoo.com/q?s=blln.pk&d=t (citing current $.037 per share price of shares of BTC common stock) (last accessed June 10, 2008).

- 11 -

### C. Count One Fails As a Matter Of Law Because Specific Performance For The Purchase Of Stock Is Not An Available Remedy For Alpha Under New York Law.

Count I of Alpha's Complaint seeks as its remedy specific performance for the issuance and reservation of BTC's stock. However, specific performance is not appropriate where an adequate legal remedy, such as money damages, exists. See Alpha Auto Brokers, Ltd. v. Continental Inc. Co., 728 N.Y.S. 2d 769, 770 (2d Dep't 2001). Furthermore, under New York law, "a contract for the issuance of stock will not be specifically enforced where the remedy at law is sufficient." Capa Partners Ltd. v. E-Smart Technologies, Inc., 5 Misc.3d 1017(A), 798 N.Y.S.2d 708 (N.Y. Sup. 2004) (citing 72 N.Y. Jur 2d Investment Securities § 99). Indeed, "a contract for the issuance of securities will be specifically enforced where the remedy at law is inadequate such as where the stock is not easily obtainable or its value cannot be readily ascertained." Id. (citing Waddle v. Cabana, 220 N.Y. 18, 26, 114 N.E. 1054, 1056 (1917) (holding specific performance appropriate only because shares are not otherwise available because there was no market for the stock and the company was otherwise privately held by one person)). Here, Alpha seeks specific performance for the issuance of BTC common stock, which is publicly traded, where BTC's obligation to transfer the stock has not yet arisen under the Transaction Documents, and where Alpha could otherwise be made whole by way of repayment of the Note, or by a cashless exercise of the Warrant.

First, BTC stock is publicly available as it is traded on the over-the-counter ("OTC") market, and its price is ascertainable at any given moment. See Yahoo Finance, Brilliant Technologies Corp. (BLLN.PK), available at http://finance.yahoo.com/q?s=blln.pk&d=t (citing current price of shares of BTC common stock) (last accessed June 10, 2008). As such, under New York law, Alpha is not entitled to the specific performance it seeks.

- 12 -

Second, under the Transaction Documents, no obligation to deliver the shares has yet arisen because the Certificate of Incorporation Amendment Filing Date has not yet occurred, which is the event that triggers BTC's obligation to release any shares to Alpha. Indeed, the shares Alpha demands are presently unavailable due to BTC's stockholders failing to approve the issuance of additional shares. Second, Alpha cannot seek specific performance pursuant to the 10,600,000 Warrant shares because any such claim under the Warrant is premature, as Alpha's rights to exercise the Warrant have not yet arisen, a "cash" exercise option is available under the Warrant, and the Warrant does not expire until September 2011.

Finally, monetary damages for breach of contract are available to Alpha. Alpha may seek money damages to collect the principal amount owed under the Note, with accrued interest, and/or the cash value of the Warrant shares from BTC, in order to make it whole. Therefore, under New York law, Plaintiff has not stated a claim for, and has no right to seek, the remedy of specific performance and Count I should be dismissed.

## **CONCLUSION**

Brilliant Technologies Corporation respectfully requests that this Court GRANT this Motion and DISMISS Counts I and II of Plaintiff's Complaint.

| | |
|---|---|
| Dated: New York, New York<br>June 11, 2008 | REED SMITH LLP<br><br>By: /s/ Lawrence J. Reina<br>    Lawrence J. Reina, Esq. (LR 7327)<br>599 Lexington Avenue<br>22nd Floor<br>New York, NY  10022-7650<br>Telephone:  212.521.5400<br>Facsimile:  212.521.5450<br><br>*Counsel for Defendant* |